**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

PARSONS XTREME GOLF, LLC,

      Plaintiff,

      v.

U.S. CUSTOMS AND BORDER
PROTECTION; RODNEY S. SCOTT, in his
official capacity as Commissioner of U.S.
Customs and Border Protection; and the
UNITED STATES OF AMERICA,

      Defendants.

Court No. 26-02113

**COMPLAINT**

Plaintiff Parsons Xtreme Golf, LLC ("PXG"), for its Complaint against Defendants, alleges as follows:

**INTRODUCTION**

1.      In violation of domestic law and the U.S. Constitution, the Government, through executive orders issued pursuant to the International Emergency Economic Powers Act ("IEEPA"), imposed tariffs on goods imported into the United States from numerous countries, including the People's Republic of China ("China"), the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong"), the Macao Special Administrative Region of the People's Republic of China ("Macao"), the People's Republic of Bangladesh ("Bangladesh"), the Nation of Japan ("Japan"), the Republic of Korea ("South Korea"), the Republic of Peru ("Peru"), the Republic of China ("Taiwan"), the Kingdom of Thailand ("Thailand"), the United Kingdom of Great Britain and Northern Ireland ("United Kingdom"), the Republic of Indonesia ("Indonesia"), and the Socialist Republic of Vietnam ("Vietnam"), from

1

which—among others—PXG imports merchandise. As the importer of record, PXG is responsible for paying these tariffs.

2.      As applied to imports from China, Hong Kong, Macao, Bangladesh, Japan, South Korea, Peru, Taiwan, Thailand, the United Kingdom, Indonesia, and Vietnam, the Government invoked IEEPA through a series of executive orders issued in early 2025 to impose, increase, and further modify tariffs on PXG imports.

3.      Beginning on February 1, 2025, the Government imposed tariffs on products of China pursuant to a national emergency declared under IEEPA addressing the synthetic opioid supply chain. On April 2, 2025, the Government invoked IEEPA to establish a reciprocal tariff regime applicable to imports from China, Hong Kong, Macao, Bangladesh, Japan, South Korea, Peru, Taiwan, Thailand, the United Kingdom, Indonesia, Vietnam, and other countries. These executive orders, including Executive Orders 14195[1] and 14257,[2] and the amendments and modifications thereto (collectively, the "Challenged Executive Orders"), imposed and continue to impose tariffs on PXG's imports (the "IEEPA Tariffs").

4.      Through the Challenged Executive Orders, the Government effectively asserted that IEEPA authorizes the President to unilaterally impose tariffs. That assertion contravenes both the plain text of IEEPA and the separation of powers embedded within the U.S. Constitution.

5.      Indeed, *all courts*—including the U.S. Supreme Court—that have reached the merits of legal challenges to the IEEPA Tariffs have held that they are unlawful: the U.S. District Court for the District of Columbia concluded IEEPA does not provide tariff authority, and a

---

[1] Exec. Order No. 14,195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[2] Exec. Order No. 14,257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025).

three-judge panel of this Court held the Executive exceeded any authority under IEEPA—decisions that the Federal Circuit affirmed in relevant part. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment,* No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025); *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

6.      The U.S. Supreme Court consolidated *V.O.S. Selections* and *Learning Resources, Inc.*, and on February 20, 2026, held "that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24–1287, Slip. Op. at 20 (U.S. Feb. 20, 2026).

7.      In reaching this conclusion, the U.S. Supreme Court held that the power to impose tariffs is "very clearly a branch of the taxing power," *id.* at 6 (citation modified), and that IEEPA's grant of authority to "regulate . . . importation" does not "convey the distinct and extraordinary power to impose tariffs." *Id.* at 14 (quotation omitted). The Court further concluded that "[a] contrary reading would render IEEPA partially unconstitutional." *Id.* at 15. The U.S. Supreme Court affirmed the Federal Circuit's decision in *V.O.S. Selections*, thereby preserving this Court's judgment on the merits that the IEEPA Tariffs are "invalid as contrary to law." *V.O.S. Selections*, 772 F. Supp. 3d at 1383–84. The U.S. Supreme Court also confirmed that challenges to the IEEPA Tariffs fall "within the exclusive jurisdiction of the [Court of International Trade]." *Learning Resources, Inc.*, Slip. Op. at 5, n.1.

8.      Following the U.S. Supreme Court's decision in *Learning Resources, Inc.*, this Court has acted to ensure that importers receive the benefit of that ruling. In *Atmus Filtration, Inc. v. United States*, Court No. 26-01259 (Ct. Int'l Trade Mar. 4, 2026), this Court ordered U.S. Customs and Border Protection ("CBP") to liquidate all unliquidated entries that were entered

subject to IEEPA duties "without regard to the IEEPA duties," and further ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *Atmus Filtration, Inc. v. United States*, Court No. 26-01259, Order at 3. This Court observed that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Id.* at 1.

9.    However, this action remains necessary given the unsettled and evolving posture of the Government's position regarding reliquidation and refunds of unlawfully collected tariffs. In prior litigation, the Government has taken the position that tariffs paid pursuant to unlawful tariff actions are permanently unrecoverable following liquidation. *See In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021) ("Government's position that any duties paid are permanently unrecoverable regardless of . . . unlawful[] collection"). More recently, in litigation challenging the IEEPA Tariffs, the Government has represented that it would not oppose this Court's authority to order reliquidation and refunds following a final and unappealable decision on the merits, and this Court has relied on those representations in denying preliminary injunctive relief. *See AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, Slip. Op. 25-154, Consol. Ct. No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025).

10.    No such representation has been made regarding PXG or its entries, and the Government's position as applied to PXG remains unresolved. Entries for which PXG has paid tariffs imposed pursuant to the Challenged Executive Orders began liquidating on or about January 2, 2026. Even assuming the availability of reliquidation in principle, the refund of the IEEPA Tariffs could, in the words of Justice Barrett, "be a complete mess"[3]—both logistically and

---

[3] *See* Transcript of Oral Argument, *Learning Resources, Inc. et al. v. Trump et al.* and *Trump et al. v. V.O.S. Selections et al.*, S. Ct. Nos. 24-1287 and 25-250, at 153 (Barrett, J.), *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-1287_b07d.pdf.

temporally—as PXG and other importers seek to reclaim billions of dollars in tariffs imposed and collected by the Government on an uncertain timeline.

11.  Indeed, the Supreme Court itself acknowledged that "[t]he United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs" and that "[t]he Court says nothing today about whether, and if so how, the Government should go about returning the billions of dollars that it has collected from importers." *Learning Resources, Inc.*, Slip. Op. at 113, 170 (Kavanaugh, J., dissenting).

12.  PXG brings this action to preserve its entitlement to declaratory, injunctive, and monetary relief consistent with the U.S. Supreme Court's decision in *Learning Resources, Inc.*, this Court's precedent, the *Atmus Filtration* order, and any representations made by the Government regarding the availability of such relief.

13.  This Court should set aside Defendants' actions as *ultra vires*, and otherwise contrary to law, and order Defendants to refund—with interest—any tariffs paid by PXG pursuant to the Challenged Executive Orders.

14.  Accordingly, for itself, PXG seeks (1) a full refund of all IEEPA Tariffs that PXG has paid, including the applicable interest to which PXG is entitled by statute, and (2) equitable relief ordering reliquidation of any entries under the IEEPA Tariffs that have been liquidated.

## **PARTIES**

15.  PXG is a U.S.-based company organized under the laws of Delaware and engaged in the business of developing and selling high-end golf equipment in the United States. PXG has made numerous entries of products subject to the IEEPA Tariffs, including, but not limited to: golf clubs, complete (HTSUS subheading 9506.31); golf balls (HTSUS subheading 9506.32); other golf equipment (HTSUS subheading 9506.39); gloves, specially designed for use in sports, of

leather or composition leather (HTSUS subheading 4203.21); and hats and other headgear, knitted or crocheted, or made up from lace, felt or other textile fabric (HTSUS subheading 6505.00). These products are imported from, among other countries, China, Hong Kong, Macao, Bangladesh, Japan, South Korea, Peru, Taiwan, Thailand, the United Kingdom, Indonesia, and Vietnam. PXG is the importer of record for the subject entries and has paid the IEEPA Tariffs.

16.     Defendant CBP is a component agency of the U.S. Department of Homeland Security, headquartered in Washington, D.C. CBP is responsible for border security and for the assessment and collection of tariffs, duties, taxes, and fees on goods imported into the United States. CBP assessed and collected the IEEPA Tariffs paid by PXG.

17.     Defendant Rodney S. Scott is the Commissioner of CBP. In his official capacity, Rodney S. Scott oversees CBP's assessment and collection of the IEEPA Tariffs paid by PXG.

18.     Defendant United States of America received the IEEPA Tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

**JURISDICTION AND STANDING**

19.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1581(i)(1)(B) and 2631(i). Section 1581(i)(1)(B) provides that the U.S. Court of International Trade has "exclusive jurisdiction" over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."

20.     PXG has standing because it is the importer of record that has paid unlawful IEEPA Tariffs pursuant to the Challenged Executive Orders in this action. The payment of those unlawful tariffs injured PXG, and the declaratory, equitable, and monetary relief sought would redress those injuries.

21.    This action is timely because it is commenced "within two years after the cause of action first accrue[d]," 28 U.S.C. § 2636(i). The Challenged Executive Orders were issued on February 1, 2025, and April 2, 2025. PXG first paid IEEPA Tariffs on or about February 6, 2025.

**GENERAL ALLEGATIONS**

I.    **IEEPA Does Not Authorize the Executive to Impose Tariffs, and the U.S. Constitution Forbids Such an Interpretation.**

22.    The power to impose tariffs is vested exclusively with Congress pursuant to the Taxing and Spending Clause. *See* U.S. Const. art. I, § 8, cl. 1 (granting Congress the "[p]ower [t]o lay and collect Taxes, Duties, Imposts, and Excises"). Because the U.S. Constitution vests this power with Congress, the Executive's power to impose or alter tariffs is limited expressly to circumstances in which Congress provides specific authorization with an intelligible principle. *See Mistretta v. United States*, 488 U.S. 361, 372 (1989).

23.    The U.S. Supreme Court confirmed in *Learning Resources, Inc.* that the Framers "gave Congress 'alone . . . access to the pockets of the people'" and "did not vest any part of the taxing power in the Executive Branch." *Learning Resources, Inc.*, Slip. Op. at 6 (quoting *Federalist No. 48*, at 310 (J. Madison)).

24.    Congress has delegated limited tariff authority to the Executive only through specific trade statutes in Title 19, cabined by substantive, procedural, and temporal limits, such as Section 301 of the Trade Act of 1974. *See, e.g.*, 19 U.S.C. §2411(c). As the U.S. Supreme Court explained, Congress has "capped the amount and duration of tariffs" and "conditioned exercise of the tariff power on demanding procedural prerequisites" in each instance it has granted tariff authority to the Executive. *Learning Resources, Inc.*, Slip. Op. at 9.

25.    IEEPA, however, contains no delegation to impose "tariffs," "duties," or "taxes"; its verbs—"investigate," "regulate," "direct and compel," "nullify," "void," "prevent," and

"prohibit"—concern regulatory control over property interests, not the revenue-raising power to tax. 50 U.S.C. § 1702(a)(1)(B). Indeed, the word "tariff" does not appear anywhere in the relevant statute. *See* 50 U.S.C. § 1702. As the U.S. Supreme Court explained, "[a]bsent from this lengthy list of specific powers is any mention of tariffs or duties," and "had Congress intended to convey the distinct and extraordinary power to impose tariffs, it would have done so expressly—as it consistently has in other tariff statutes." *Learning Resources, Inc.*, Slip. Op. at 14.

26.    IEEPA grants the Executive certain powers that "may only be exercised to deal with an *unusual and extraordinary threat* with respect to which a national emergency has been declared," and expressly states that it "*may not be exercised for any other purpose*." 50 U.S.C. § 1701(b) (emphasis added).

27.    Reading IEEPA to contain a hidden tariff power would violate separation of powers and raise grave constitutional problems under the major questions doctrine. *See West Virginia v. EPA*, 597 U.S. 697, 721 (2022); *Biden v. Nebraska*, 600 U.S. 477, 504–06 (2023). Indeed, a three-Justice plurality of the U.S. Supreme Court reasoned in *Learning Resources, Inc.* that "[t]he 'economic and political significance' of the authority the President has asserted likewise 'provide[s] a reason to hesitate before concluding that Congress meant to confer such authority,'" and that the "stakes here dwarf those of other major questions cases." *Learning Resources, Inc.*, Slip. Op. at 11 (Roberts, C.J., Barrett & Gorsuch, JJ., concurring) (quoting *West Virginia*, 597 U.S. at 721).

28.    Ultimately, the U.S. Supreme Court's decision striking down the IEEPA tariffs reasoned that IEEPA's text does not authorize the imposition of tariffs. *See Learning Resources, Inc.*, Slip. Op. at 20 ("[T]he terms of IEEPA do not authorize tariffs.").

8

## II.    Defendants Impose Unlawful IEEPA Tariffs.

29.    Despite the lack of authority to impose tariffs under IEEPA, beginning on February 1, 2025, the Government, through the Challenged Executive Orders, invoked IEEPA to impose tariffs on imports from China.[4]

30.    On April 2, 2025, the Government invoked IEEPA through an executive order establishing a reciprocal tariff regime applicable to imports from China, Hong Kong, Macao, Bangladesh, Japan, South Korea, Peru, Taiwan, Thailand, the United Kingdom, Indonesia, Vietnam, and other countries, citing "U.S. trading partners' economic policies that suppress domestic wages and consumption" as an "unusual and extraordinary threat to the national security and economy of the United States" as the asserted basis for action under IEEPA.[5] As applied to PXG merchandise, that executive order subjected PXG's imports to the IEEPA Tariffs, which were subsequently modified through amendments to the Challenged Executive Orders.

31.    On May 28, 2025, this Court held that the executive orders issued on February 1, 2025, and April 2, 2025, imposing tariffs pursuant to IEEPA, along with the subsequent amendments, were unlawful as "contrary to law." *V.O.S. Selections*, 772 F. Supp. 3d at 1383–84.

32.    The Challenged Executive Orders required modifications to the HTSUS, mandating the creation of additional tariff provisions under which goods from China, Hong Kong, Macao, Bangladesh, Japan, South Korea, Peru, Taiwan, Thailand, the United Kingdom, Indonesia, Vietnam, and other countries were required to be entered in addition to their ordinary HTSUS classifications.

---

[4] *See* Exec. Order No. 14,195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[5] *See* Exec. Order No. 14,257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025).

**III.    The Process Through Which CBP Has Implemented the Unlawful IEEPA Tariffs.**

33.    CBP is responsible for assessing and collecting tariffs on imported merchandise pursuant to the tariff rates and provisions set forth in the HTSUS. *See* 19 U.S.C. §§ 1500, 1502.

34.    When merchandise is entered into the United States, the importer of record submits an entry summary identifying the applicable HTSUS classification for the merchandise, including the appropriate heading, subheading, and statistical suffix. CBP reviews the entry for accuracy and assesses tariffs based on the HTSUS provisions applicable at the time of entry.

35.    The HTSUS is organized hierarchically. Four-digit headings identify broad classes of merchandise, while six-digit subheadings further subdivide those classes into specific product categories, followed by statistical suffixes for reporting purposes. For example, HTSUS heading 9506 covers "[a]rticles and equipment for general physical exercise, gymnastics, athletics, other sports," while HTSUS subheading 9506.39 covers "Other." At the statistical reporting level, statistical reporting number 9506.39.00.60 covers "Parts of golf clubs." An importer entering such merchandise would therefore classify the merchandise under HTSUS statistical reporting number 9506.39.00.60. *See* 19 U.S.C. § 1202.

36.    Under the Challenged Executive Orders, CBP was directed to assess additional tariffs through newly created HTSUS provisions that operate as an overlay to the underlying classification. In practice, this required importers to declare both the ordinary HTSUS classification (e.g., 9506.39) and an additional IEEPA-specific tariff provision on the same entry summary.

37.    The United States International Trade Commission ("USITC") publishes and maintains the HTSUS, including modifications implemented pursuant to executive action. *See* 19 U.S.C. §§ 1202, 3005, 3006; *Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010

(2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

38.     CBP does not independently determine whether the IEEPA Tariffs are lawful or applicable as a matter of policy. Rather, CBP applies the tariff provisions specified in the HTSUS, including any additional tariff provisions added pursuant to executive action, in a ministerial manner consistent with its statutory role. *See United States v. U.S. Shoe Corp.*, 523 U.S. 360, 366 (1998) (describing CBP's role as passively collecting duties where it "performs no active role").

39.     After assessment, CBP liquidates the entry, which constitutes the final computation of the tariffs assessed on the merchandise. *See* 19 C.F.R. § 159.1. Liquidation reflects CBP's application of the tariff provisions in effect and does not involve an independent determination of the legality of the underlying tariff regime.

40.     During the *V.O.S. Selections* and *Learning Resources, Inc.* litigation, CBP continued to collect the IEEPA Tariffs under the Challenged Executive Orders. Only after the U.S. Supreme Court's decision affirming *V.O.S. Selections*, did CBP announce that it would no longer collect the IEEPA Tariffs "on or after 12:00 a.m. eastern time on February 24, 2026" under the Challenged Executive Orders.[6]

**IV.     PXG Has Been Harmed by the Unlawful IEEPA Tariffs.**

41.     As of the date of this Complaint, PXG has paid tariffs assessed pursuant to the Challenged Executive Orders on merchandise imported into the United States.

42.     PXG imports subject to the IEEPA Tariffs have entered the United States.

---

[6] U.S. CBP, *CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026), *available at* https://content.govdelivery.com/bulletins/gd/ USDHSCBP-40b11c9?wgt_ref=USDHSCBP_ WIDGET_2.

43. As applied to PXG imports from China, Hong Kong, Macao, Bangladesh, Japan, South Korea, Peru, Taiwan, Thailand, the United Kingdom, Indonesia, Vietnam, and other countries, PXG has paid tariffs on a continuous basis since February 6, 2025, after the Challenged Executive Orders subjected those imports to the IEEPA Tariffs.

44. Entries for which PXG has paid IEEPA Tariffs began to liquidate on or about January 2, 2026.

45. As a result of the IEEPA Tariffs, PXG has suffered financial harm from payment of unlawful tariffs on its imports.

46. Upon information and belief, CBP has advised importers that liquidation of entries subject to the IEEPA Tariffs will proceed in accordance with the existing statutory framework, without extension beyond the time periods prescribed by statute.

47. In prior litigation involving unlawful tariff actions, Defendants have taken the position that tariffs assessed and collected pursuant to an unlawful tariff regime may be unrecoverable following liquidation. *See In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021) (describing the "Government's position that any duties paid are permanently unrecoverable regardless of . . . unlawful[] collection").

## <u>COUNT I</u>

### IEEPA Tariffs Are Unlawful and In Excess of Statutory Authority
### (*Learning Resources, Inc. v. Trump*; 50 U.S.C. § 1701 *et seq.*)

48. Plaintiff PXG hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

49. In *Learning Resources, Inc.*, the U.S. Supreme Court held that all tariffs imposed under IEEPA are unlawful. *Learning Resources, Inc.*, Slip. Op. at 20. The Court concluded that the text of IEEPA does not "convey the distinct and extraordinary power to impose tariffs," and

that "[a] contrary reading would render IEEPA partly unconstitutional." *Learning Resources, Inc.*, Slip. Op. at 16, 14–15. The U.S. Supreme Court affirmed the Federal Circuit's decision in *V.O.S. Selections*, thereby preserving this Court's judgment on the merits that the IEEPA Tariffs "and all modifications and amendments . . . to be invalid as contrary to law." *V.O.S. Selections*, 772 F. Supp. 3d at 1383–84.

50.     The Challenged Executive Orders impose duties and modify the HTSUS solely under IEEPA.

51.     This Court is bound by the U.S. Supreme Court's holding that the Challenged Executive Orders are "contrary to law," *id.*, and should order a refund of all IEEPA Tariffs that have been collected under the Challenged Executive Orders, with interest.

52.     Moreover, federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1). This Court can, and should, exercise its equitable power and order the government to refund all IEEPA Tariffs paid under the Challenged Executive Orders as to Plaintiff PXG.

53.     PXG is thus entitled to declaratory relief that the Challenged Executive Orders are contrary to law and void *ab initio*, and a refund of all IEEPA Tariffs that have been collected prior to February 24, 2026, from Plaintiff PXG, with interest required by law "within 30 days of liquidation or reliquidation." *See* 19 U.S.C. § 1505(b).

## **<u>PRAYER FOR RELIEF</u>**

Wherefore Plaintiff PXG respectfully requests that this Court:

(1) declare that the Challenged Executive Orders are contrary to law and *void ab initio* with respect to Plaintiff PXG for the reasons stated by the U.S. Supreme Court in *Learning Resources, Inc.*;

(2) order CBP to reliquidate any entries under the IEEPA Tariffs that have been liquidated, without regard to the IEEPA duties, consistent with this Court's order in *Atmus Filtration, Inc. v. United States*, Court No. 26-01259 (Ct. Int'l Trade Mar. 4, 2026);

(3) order CBP to liquidate all unliquidated entries subject to IEEPA Tariffs without imposition of the tariffs on those entries;

(4) order the United States to refund Plaintiff PXG the IEEPA Tariffs collected on its entries, with interest provided by law;

(5) enter a money judgment against the United States for the total amount of IEEPA Tariffs collected from PXG, with interest;

(6) award Plaintiff PXG its reasonable costs, including attorneys' fees, incurred in bringing this action; and

(7) grant any further relief as this Court deems proper.

Respectfully submitted,

Dated: March 16, 2026

*/s/ Brett W. Johnson*

Brett W. Johnson, Bar No. 021527
Derek C. Flint, Bar No. 034392
T. Troy Galan, Bar No. 039117
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone:    602.382.6000
Facsimile:    602.382.6070

*Counsel for Plaintiff*

15